UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
– KANSAS CITY DIVISION

| | |
|---|---|
| **RANIA BARAKAT,**<br><br>　　Plaintiff,<br><br>v.<br><br>**MIKE BROWN;**<br>**BREN BROWN;**<br>**FRONTIER JUSTICE KCMO, LLC,** a Missouri domestic for-profit corporation;<br>**BMB HOLDINGS, LLC,** a Missouri Corporation; and<br>**FRONTIER JUSTICE, LLC,** a Delaware Corporation;<br><br>　　Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No.:<br>Hon.: |

## COMPLAINT

Plaintiff **RANIA BARAKAT**, by and through her attorneys, CAIR National Legal Defense Fund and Baldwin & Vernon Law, brings this action against **BREN BROWN, MIKE BROWN, FRONTIER JUSTICE KCMO, LLC, BMB HOLDINGS, LLC**, and **FRONTIER JUSTICE, LLC**, for declaratory and injunctive relief, pre-judgement and post-judgement interest, costs and attorneys' fees for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a committed when Frontier Justice denied Ms. Barakat service because of her hijab – a religious head covering worn by Muslim women.

### Jurisdiction and Venue

1. Ms. Barakat's claim for discrimination on the basis of religion in violation

1

of Title II is brought under 42 U.S.C. §2000a.

2. This Court has subject matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. §§ 2000a-2000a-5(a). As such, this Court has original jurisdiction under 28 U.S.C. §§ 1331, 1343.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendants because Defendants conduct business in Jackson County, Missouri.

5. Ms. Barakat's claims for attorneys' fees and costs are predicated upon Title II, 42 U.S.C. §2000a-3(b), and Fed. R. Civ. P. 54.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this district and because Defendants reside in and do business in this district.

### Parties

7. Plaintiff Rania Barakat is a Muslim woman who sought services and access to Defendant's facility. Ms. Barakat resides in Jackson County, Missouri.

8. Defendant Bren Brown is the Founder and President of Frontier Justice KCMO, LLC. Defendant Bren Brown has authority to act on behalf of Frontier Justice and is responsible for the management and operation of all activities of Defendant Frontier Justice.

9. Defendant Mike Brown is the Founder and CEO of Frontier Justice KCMO, LLC. Defendant Mike Brown has authority to act on behalf of Frontier Justice and is responsible for the management and operation of all activities of Defendant Frontier Justices.

10. Defendant Frontier Justice KCMO, LLC is a domestic for-profit

corporation incorporated under the laws of Missouri (Business Entity No. LC1371902). Defendant Frontier Justice's headquarters and principal place of business is located at 800 NE Jones Industrial Dr, Lee's Summit, MO 64064. Defendant Frontier Justice regularly and systematically conducts business in the State of Missouri and within Jackson County, Missouri.

11. Defendant BMB Holdings, LLC is a domestic for-profit corporation incorporated under the laws of Missouri (Charter No. LC1364225). BMB Holding's principal place of business is 4600 Madison Ave., Suite 1100, Kansas City, MO 64112. Defendant BMB Holdings regularly and systematically conducts business in the State of Missouri.

12. Defendant FRONTIER JUSTICE, LLC is a foreign for-profit corporation incorporated under the laws of Delaware (Charter No. FL001417240). Defendant regularly and systematically conducts business in the State of Missouri.

13. At all times relevant to this complaint, Defendants Mike and Bren Brown owned and operated Frontier Justice.

14. At all times relevant to this complaint, Frontier Justice was a gun range, or place of entertainment, whose establishment affects interstate commerce.

15. A substantial portion of the goods sold by Frontier Justice have moved in interstate commerce.

16. At all times relevant to this complaint, Frontier Justice offered patrons, including out-of-state travelers, entertainment in the form of a shooting range. Frontier Justice also offers classes, an event space, group events, leagues, date nights, and other events. A substantial portion of the materials used in the operation of Frontier Justice – including targets, firearms, and ammunition have moved in interstate commerce.

17. Frontier Justice is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b).

18. The operation of the establishment affects commerce within the meaning of 42 U.S.C. § 2000a(c).

**Introduction**

19. Since at least 2016 to present, Defendants implemented policies and practices that deny Muslims, on account of their religion, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations of the establishment known as Frontier Justice. These policies and practices have included (1) banning headwear, including religious headwear such as hijabs, but permitting front facing baseball caps, and (2) otherwise denying Muslims admission to the establishment while offering admission to similarly situated patrons who are not Muslims.

20. Defendants Mike and Bren Brown were responsible for devising, implementing, and instructing employees and agents to carry out the discriminatory practices and policies described above at the establishment known as Frontier Justice.

21. Frontier Justice imposes a discriminatory headwear ban that prohibits, "Hats, caps, bandanas or any other head covering…except baseball caps facing forward." (Frontier Justice Membership and Range Rules – Dress Code). **Exhibit A.**

22. Consistent with Defendant Mike and Bren Brown's instructions and their headwear ban, in numerous instances since at least 2016, Defendants have denied Muslims who wear hijab entry to Frontier Justice, based on violations of their dress code policy, while allowing similarly situated individuals who wear headcaps or other clothing that similarly covers the neck and head to enter their facility and access to their services.

## Factual Background

23. Ms. Barakat is a Muslim woman. She has a sincerely held religious belief that she must wear the hijab, a religious head covering worn by Muslim woman. Plaintiff's hijab is a rectangular scarf that wraps around her head and neck area, with the option of being tucked into her clothing.

24. Frontier Justice is a "faith, family and freedom" based gun range located in Lee's Summit, Missouri. According to its website, Frontier Justice is "owned by a Christian family that is committed to supporting the faith community. Frontier Justice donates ten percent of all sales directly to the National Christian Foundation."

25. Frontier Justice is advertised and open to the general public. The business maintains regular business hours and advertises these hours prominently on the front window of the establishment.

26. It also advertises its business on its website (frontier-justice.com), and on its public social media accounts such as Facebook (frontierjusticemo) and Instagram (@frontier_justice).

27. While Frontier Justice offers an Annual Individual Membership that provides certain benefits to its members, access to the business is not restricted to any group of private members. Patrons can access the facility during regular business hours and by paying an admission fee.

28. Frontier Justice offers entertainment in the form of an indoor shooting range. It also sells goods and services including, but not limited to, firearms, firearm accessories, and apparel.

29. A substantial portion of the goods sold move in interstate commerce, being made or obtained outside the state of Missouri.

30. Firearms utilized at the business and providing the primary means of entertainment for patrons are regulated federally as articles moving in interstate commerce, as recognized in the enactment of the National Firearms Act of 1934, Omnibus Crime Control and Safe Streets Act of 1968, Gun Control Act of 1968, Firearm Owners Protection Act, and other later acts of Congress.

31. On New Year's Day 2020, Ms. Barakat visited Frontier-Justice with her husband for the first time. At the time of the visit, Ms. Barakat was wearing a hijab in accordance with her religious belief.

32. Ms. Barakat and her husband enjoy attending gun ranges and have visited several in the past without any issues, and with her hijab.

33. While Ms. Barakat and her husband waited in line, they filled out the liability waiver form available on Frontier Justice's website.

34. When Ms. Barakat approached the cashier, she informed the employee that she had filled out the waiver form and provided her driver's license.

35. The employee did not request any additional information or inform Ms. Barakat of any additional process required before she could use the range.

36. Further, the employee did not claim that any exclusive membership system existed or that any other approval was required, nor did she indicate to Ms. Barakat that any further process was needed to use the range for entertainment purposes.

37. Prior to accepting Ms. Barakat's cash payment, the employee told her that she must remove her hijab in order to use the facilities, citing the company's dress code policy.

38. After Ms. Barakat repeatedly asked to see the dress code policy, as it was not posted visibly in the store, the employee responded that "hats, caps, bandanas, or any other head covering will be removed in the facility, except baseball caps facing forward."

39. When Ms. Barakat asked the employee the reasoning as to why her hijab is included in the policy, the employee responded that they did not know.

40. The employee called over the Range Manager, Manager Danielle. Manager Danielle explained the reasoning behind the policy was that shrapnel can cause her hijab and skin to burn.

41. Ms. Barakat and her husband explained that they have gone shooting multiple times previously wearing her hijab in the past with no issues.

42. Further, Ms. Barakat's husband explained that people wear long sleeves and shirts that cover their necks to protect them from shrapnel.

43. Manager Danielle firmly stated that those gun ranges are not Frontier Justice and they have different rules.

44. Manager Danielle's tone was aggressive and loud, stating that "it is New Years, and we are really busy," in an effort to have Ms. Barakat and her husband leave.

45. Ultimately, Ms. Barakat and her husband decided to leave the range.

46. While leaving, the cashier and another employee apologized for her having to go through this and said they did not understand the reasoning for the policy either.

47. The next day, Ms. Barakat and her husband attended another gun range, and discussed the situation. Employees at the new gun range said that Frontier Justice had a reputation for turning away Muslims. They told Ms. Barakat and her husband that they were more than welcome to shoot with her hijab any time.

48. When Ms. Barakat called Frontier Justice later in the week, they refused to provide additional information regarding the incident on New Year's Day.

49. Frontier Justice has denied other Muslims access to their facility and the use of their services as a matter of policy because of their hijabs.

50. A Google Review by Heba Khalifa states, "We were not allowed to shoot because my friends wear a hijab, or head scarf, for religious reasons. A member of their staff told us that we could not shoot because apparently a scarf covers your identity." **Exhibit B**.

51. K Madany writes in her Google Review, "My friends and I [were] turned away by the people at this lovely establishment because we were wearing head scarfs. While we explained that we have not ever had an issue with any of the ranges we have gone to in Kansas, Missouri, California, and all over the States and other countries with our scarfs." **Exhibit C.**

52. Kay Reneau writes in a Google Review, "The reasoning that the owner gave for why it would not allow Muslim women on their range is because they cannot identify them while they wore their scarfs." **Exhibit D.**

53. Quako Street writes, "They insist that women remove their head scarfs in order to shoot." **Exhibit E.**

54. Tek 10en's review states, in relevant part, "A group of Muslim women were in there with their head scarves, and the told them they have to remove their scarves in order for them to shoot." **Exhibit F.**

55. Upon information and belief, Frontier Justice chooses to enforce its policy on a discriminatory basis, and in a manner that disproportionately impacts Muslim women. For example, at least three other Instagram posts tagging or posted by Frontier Justice show men shooting at the range while wearing a baseball caps facing backwards. **Exhibit G.**

56. An Instagram post posted by Frontier Justice shows a woman at the facility wearing a winter hat. **Exhibit H.**

57. An October 10, 2019 Instagram post tagging Frontier Justice shows a woman shooting at the range while wearing a scarf wrapped around her neck. **Exhibit I.**

58. Additionally, Frontier Justice's rationale for its head covering policy is pretextual insofar as the policy's goal is to exclude some Muslims from Defendants' gun range. This pretext is evident insofar as Defendants' policy does not further Defendants' interest in safety—clothing-covered skin is better protected from shrapnel and shells than exposed skin—and is only applied to Muslims.

59. Upon information and belief, as of the time of this filing, Frontier Justice continues to deny services to Muslims who wear the hijab.

60. There is no legitimate basis for denying Muslims services and access to the facility, merely because they choose to wear hijab.

61. Defendants' conduct described above constitutes a pattern or practice of resistance of the full and equal enjoyment by Muslims who wear the hijab on account of these individuals' religion, of rights secured by 42 U.S.C. §§ 222a, *et seq.,* and the pattern or practice is of such a nature and is intended to deny the full exercise of such rights.

## Claims for Relief

### Count I
### Discrimination on the Basis of Religion – Denial of Services in Violation of Title II

62. Plaintiff realleges and incorporates the allegations throughout the Complaint.

63. Defendant is an establishment affecting interstate commerce, and principally acting as a place of entertainment.

64. Defendant violated 42 U.S.C. §2000a by denying Plaintiff and other similarly situated Muslims the full and equal enjoyment of its services and facility because of their religion.

65. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of

9

Case 4:21-cv-00934-RK   Document 1   Filed 12/28/21   Page 9 of 11

enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

66. Defendant acted with malice and reckless indifference to plaintiff's federally protected rights.

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Honorable Court enter judgement in her favor and against Defendant, on each and every county in this Complaint, and enter an Order awarding the following relief:

1. Declaring that the discriminatory practices and policies of the Defendants violate Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a, *et seq.;*

2. Enjoining the Defendants, their employees, agents, and successors, and all other persons in active concern or participation with them, from engaging in any act or practice which, on the basis of religion, denies or abridges any rights secured by Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a*, et seq.;*

3. Requiring the Defendants, their employees, agents, and successors, and all other persons in active concern or participation with them, from engaging in any act or practice which, on the basis of religion, denies or abridges any rights secured by Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.;*

4. An award of attorneys' fees, costs and expenses of all litigation; and,

5. Any further relief to which Plaintiff is entitled or that this Honorable Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

**BALDWIN & VERNON**

/s/ Kevin Baldwin
Kevin Baldwin, MO Bar 49101
Eric Vernon, MO Bar 47007
Sylvia Hernandez, MO Bar 70670
Robin Koogler, MO Bar #71979
**BALDWIN & VERNON**
108 S Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
Robin@bvalaw.net

**CAIR LEGAL DEFENSE FUND**

/s/ Lena Masri
Lena F. Masri (DC 100019) ∂
Gadeir I. Abbas (VA 81161) ∂ β
Justin Sadowsky (DC977642) ∂
Zanah Ghalawanji (MI P81136) ∂ ç
453 New Jersey Ave SE
Washington, DC 20003
Phone: (202) 642-7420
Email: ldf@cair.com

*Attorneys for Plaintiff*

*∂ Pro hac vice pending*
β Licensed in VA, not in DC.
Practice limited to federal matters.
Ç Licensed in MI, not in DC.
Practice limited to federal matters.

**Dated: December 28, 2021**