**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RANIA BARAKAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00934-RK |
| | ) | |
| MIKE BROWN, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS MIKE BROWN, BREN BROWN,**
**FRONTIER JUSTICE KCMO, LLC, AND FRONTIER JUSTICE, LLC,**
**AND FOR AWARD OF ATTORNEY'S FEES AND EXPENSES**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

FACTS ....................................................................................................................... 3

LEGAL STANDARD ............................................................................................... 4

    1.    DISMISSAL FOR FAILURE TO STATE A CLAIM. ..................................................... 5

ARGUMENT ............................................................................................................. 6

    1.    FRONTIER KCMO'S FACILITY WHICH INCLUDES A GUN RANGE IS NOT A PLACE OF PUBLIC ACCOMMODATION. .......................................................................................... 6

    2.    PLAINTIFF'S DISPARATE IMPACT CLAIM DOES NOT STATE A CLAIM UNDER TITLE II......... 9

    3.    PLAINTIFF PREVIOUSLY WAIVED AND RELEASED HER CLAIM. ......................... 12

    4.    DEFENDANTS MIKE BROWN, BREN BROWN, AND FJ SHOULD BE DISMISSED.................... 14

    5.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS MOOT................................. 16

    6.    THE FRONTIER DEFENDANTS ARE ENTITLED TO AN AWARD OF THEIR ATTORNEY'S FEES AND EXPENSES............................................................................................... 17

CONCLUSION .................................................................................. 18

Case 4:21-cv-00934-RK   Document 23   Filed 02/23/22   Page 2 of 23

# **TABLE OF AUTHORITIES**

## Cases

*Ahmed v. Sessions*, 2017 U.S. Dist. LEXIS 120954  (D. Minn. July 11, 2017) .......................... 16

*Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179 (W.D. Wash. 2002) .................................. 10, 11

*Ali v. Cangemi*, 419 F.3d 722 (8th Cir. 2005).................................................................................. 16

*Arguello v. Conoco, Inc.*, 1997 U.S. Dist. LEXIS 23574 (N.D. Tex. 1997), *aff'd in part and rev'd in part*, 207 F.3d 803 (5th Cir. 2000)......................................................................................... 10

*Ark. AFL-CIO v. Federal Communications Commission*, 11 F.3d 1430 (8th Cir. 1993)............... 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ................................................................................. 5

*Blackstock v. Kohn*, 994 S.W.2d 947 (Mo. Banc 1999) ................................................................ 13

*Boyle v. Jerome Country Club*, 883 F. Supp. 1422 (D. Idaho 1995)............................................ 12

*Bracey v. Buchanan*, 55 F. Supp. 2d 416 (E.D. Va. 1999) .......................................................... 15

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)...................................................... 13

*Charleston Hous. Authority v. United States Dept. of Agriculture*, 419 F.3d 729 (8th Cir. 2005).. 5

*Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ......................................................... 17

*Chu v. Gordmans, Inc.*, 2002 U.S. Dist. LEXIS 26623, *7 (Case No. 8:01CV182 , D.C. Neb. Apr. 12, 2002 ........................................................................................................................... 7, 9

*Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 433 (4th Cir. 2006).............................. 7, 8

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ................................................................................. 5

*Gahr v. Heritage Found.*, 2020 U.S. Dist. LEXIS 18344 *2 (Dist. D.C. Feb. 3, 2020)................ 9

*Griggs v. Duke Power Co.*, 401 US 424 (1971) ........................................................................... 10

*Hardie v. NCAA*, 97 F. Supp. 3d 1163 (S.D. Cal. 2015), *aff'd on other grounds*, 876 F.3d 312 (9th Cir. 2017) ................................................................................................................................. 10

*Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557 (Mo. Ct. App. 2013)................................. 13

*Jalal v. Lucille Roberts Health Clubs, Inc.*, 254 F. Supp. 3d 602 (S.D.N.Y. 2017)..................... 12

*LaRoche v. Denny's Inc.*, 62 F.Supp.2d 1366 (S.D. Fla. 1999)................................................... 10

*M.H. v. Bristol Bd. Of Educ.*, 169 F. Supp. 2d 21 (D. Conn. 2001) ............................................ 14

*Montez v. Romer*, 32 F. Supp. 2d 1235 (D. Co. 1999)................................................................. 15

*Munno v. Town of Orangetown*, 391 F. Supp. 2d 263 (S.D.N.Y. 2005) ....................................... 4

*Parker v. Tyson Foods, Inc.*, 2007 U.S. Dist. LEXIS 49519 (S.D. Miss. 2007) ......................... 15

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999)............................................... 4

*Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 388 (Mo. Ct. App. 1999) ........ 15

*Saylor v. Ridge*, 989 F. Supp. 680 (E.D. Pa. 1998)..................................................................... 15

*Serrano v. Marcal Paper Mills, LLC*, 2012 U.S. Dist. LEXIS 10742 (D.N.J. 2012)................... 15

*Shannon v. Univ. of Wisc.-Oshkosh*, 2000 U.S. Dist. LEXIS 24790 (E.D. Wis. 2000) .............. 15

*Spanger v. Moderne Glass Co.*, 2007 U.S. Dist. LEXIS 15697 (W.D. Pa. 2007)....................... 15

*Steelman v. City of Salem*, 2013 U.S. Dist. LEXIS 48624 (E.D. Mo. 2013)............................... 17

## Statutes

28 C.F.R. § 35.130(h) .................................................................................................................... 6

## Rules

Fed. R. Civ. P. 12(b)(1)........................................................................................................... 1, 2, 4

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 5
Fed. R. Civ. P. 12(h)(3)................................................................................................. 4, 16
Fed. R. Civ. P. 8(a)(2)....................................................................................................... 5
Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq.*................................. 2, 3, 6, 17

iv

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS MIKE BROWN, BREN BROWN,**
**FRONTIER JUSTICE KCMO, LLC, AND FRONTIER JUSTICE, LLC,**
**AND FOR AWARD OF ATTORNEY'S FEES AND EXPENSES**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Mike Brown, Bren Brown, Frontier Justice KCMO, LLC, and Frontier Justice, LLC (collectively, "Frontier Defendants") move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[1] The Complaint purports to state a single claim against the Frontier Defendants for alleged religious discrimination on January 1, 2020 in violation of Title II of the Civil Rights Act of 1964, and Plaintiff seeks only declaratory and injunctive relief against the Frontier Defendants.

Plaintiff's Complaint should be dismissed as to each of these four Defendants on multiple bases. First, the facility that houses the gun range that is the subject of Plaintiff's complaint is not a "place of public accommodation" within the scope of Title II. Second, Plaintiff purports to state a claim based on alleged disparate impact, but such a claim is not within the purview of Title II. Furthermore, before trying to enter the gun range, Plaintiff signed a waiver and general release that released all potential claims against all Defendants in this case. That waiver and release serves as a bar to this action.

Plaintiff's complaint appears to recognize that Defendant Frontier Justice KCMO, LLC ("Frontier KCMO") owns and operates the gun range, which is part of the retail facility. Thus, Frontier KCMO would be the target of Plaintiff's discrimination claim and the sole object of the prospective declaratory and injunctive relief she seeks. Defendants Frontier Justice, LLC ("FJ"),

---

[1] Frontier Defendants incorporate by reference the Motion to Dismiss by Defendant BMB Holdings, LLC pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and the Suggestions in Support ("BMB's Motion").

1

Mike Brown and Bren Brown should be dismissed because Plaintiff's Complaint fails to state a claim against them for which the Court can grant relief.

Finally, Plaintiff's Complaint alleges that, only after she requested to enter the live firing range did a Frontier KCMO employee request that she remove her hijab. At that time, she alleges she chose not to pay for or enter the gun range and voluntarily left the facility rather than comply with Frontier KCMO's range safety Dress Code or continue to enjoy her access to the other portions of the facility. Long before the filing of this action, Frontier KCMO began offering a close-fitting hijab (like those often used for swimming) to those patrons who prefer to wear a hijab while inside the live-fire gun range. The 'swim' hijab satisfies the Defendant's dress code because it is tightly fitting and allows for safe use of the live range, and it presumably also satisfies the Plaintiff's religious requirement. Thus, this accommodation by Frontier KCMO renders the controversy moot. Defendant has already supplied the relief requested by Plaintiff. Article III standing collapses where the alleged injury in fact cannot be redressed by judicial relief because it has already been eliminated by change in circumstances. Plaintiff's Complaint therefore should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

Under 42 U.S.C. § 2000a-3, the Frontier Defendants move the Court for an award of their attorney's fees and expenses in obtaining a dismissal. Plaintiff's filing of this action, and her inclusion of the Frontier Defendants, including Mike Brown, Bren Brown, Frontier Justice, LLC, and Frontier Justice KCMO, LLC, was without factual or legal foundation. Therefore, upon entry of the dismissal, the Frontier Defendants are the prevailing party and entitled by statute to an award of their fees and expenses incurred here.

## FACTS

Plaintiff's Complaint alleges a single claim of religious discrimination under Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq.* Doc. 1, pp. 11-12. Plaintiff alleges she is a Muslim woman who, on January 1, 2020 after entering the retail facility, sought access to a gun range in Jackson County, Missouri, operated by Defendant Frontier Justice KCMO, LLC, but she voluntarily chose to leave the facility rather than comply with the facility's Dress Code, which Defendant adopted to ensure the safety of all gun range participants. Doc. 1, ¶¶ 7, 37, 45; Doc. 1-2, p. 5. Plaintiff's sole requested relief in her Complaint is entry of declaratory and injunctive relief prospectively against all Defendants. Doc. 1, p. 10.

Plaintiff's Complaint names five Defendants: Mike Brown, Bren Brown, Frontier Justice KCMO, LLC, BMB Holdings, LLC, and Frontier Justice, LLC. Doc. 1, p. 1. As for Defendants Mike and Bren Brown, paragraphs 8 and 9 of the Complaint allege they are officers of Defendant Frontier Justice KCMO, LLC; paragraph 13 says they "owned and operated Frontier Justice;" and paragraph 20 alleges they "were responsible for devising, implementing, and instructing employees and agents to carry out the discriminatory practices and policies described above at the establishment known as Frontier Justice." Doc. 1, ¶¶ 8, 9, 13, 20. The 11-page Complaint makes no further mention of either of the Browns. Doc. 1. Dismissal of the two individual Defendants is appropriate.

Paragraph 10 of Plaintiff's Complaint identifies Defendant Frontier Justice KCMO, LLC ("Frontier KCMO") as a Missouri corporation doing business in Jackson County, Missouri. Doc. 1, ¶ 10. Paragraph 12 identifies Defendant Frontier Justice, LLC ("FJ") as a Delaware corporation doing business in Missouri. Doc. 1, ¶ 12. Plaintiff's Complaint makes no subsequent mention of either Frontier KCMO or Frontier Justice. Doc. 1. FJ is a holding company for multiple entities,

3

including Frontier KCMO, which owns and operates the facility housing the gun range identified in the Complaint. Exhibits 1 and 2.[2]

Instead, Plaintiff's Complaint contains a series of allegations against "Frontier Justice," which the Complaint does not define as Frontier KCMO, Frontier Justice, or both. Doc. 1, ¶¶ 8, 9, 10, 12, 13, 14-17, 20-22, 24-28, 33, 48-49, 56, 58, and 59. It appears, however, that Plaintiff's reference to "Frontier Justice" intends to refer to Frontier KCMO, which owns and operates the facility that includes the gun range identified in the Complaint. Paragraph 14 states, "Frontier Justice was a gun range;" paragraph 16 states, "Frontier Justice offered patrons, including out-of-state travelers, entertainment in the form of a shooting range," paragraph 17 alleges "Frontier Justice is a place of public accommodation," and paragraph 28 alleges "Frontier Justice offers entertainment in the form of an indoor shooting range." Doc. 1, ¶¶ 14, 16, 17, 28. Only Frontier Justice KCMO operates the Lee's Summit, Missouri facility and the gun range component of that facility. Dismissal of the other corporate Defendants is appropriate.

## LEGAL STANDARD

### 1. Dismissal for Lack of Subject Matter Jurisdiction.

Fed. R. Civ. P. 12(b)(1) provides that a party may move to dismiss for lack of subject matter jurisdiction. Under 12(h)(3), if the Court determines at any time that it lacks subject matter jurisdiction, it must dismiss the case.

---

[2] On a motion to dismiss, a court ordinarily confines its analysis to the four corners of the complaint, *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999), but a court may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* Given Plaintiff's Complaint does not distinguish between Frontier KCMO and Frontier Justice, explain why either is included in this lawsuit, or clarify whether Plaintiff's allegations are against one or both Defendants, the Secretary of State documents showing Frontier Justice, LLC, and Frontier Justice KCMO, LLC as separate entities attached as Exhibits 1 and 2 does not "contradict the complaint" or its allegations of discrimination, and the document should be "embraced by the pleadings" as clarifying the identity and status of the separate Defendants. "The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Munno v. Town of Orangetown,* 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).

4

When a controversy no longer exists, or the parties no longer have a cognizable interest in the outcome of the lawsuit, the case becomes moot. *Ark. AFL-CIO v. Federal Communications Commission,* 11 F.3d 1430, 1435 (8th Cir. 1993). Mootness is a jurisdictional bar. *Id.* When a case becomes moot, subject matter jurisdiction no longer exists, and the case must be dismissed. *Charleston Hous. Authority v. United States Dept. of Agriculture,* 419 F.3d 729, 739 (8th Cir. 2005).

**2.   Dismissal for Failure to State a Claim.**

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007), *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

The complaint "must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009), *quoting Twombly*, 550 U.S. at 570. "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly,* 550 U.S. at 557. In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id., quoting Twombly,* 550 U.S. at 555.

5

## ARGUMENT

**1.   Frontier KCMO's Facility Which Includes a Gun Range is not a Place of Public Accommodation.**

Title II of the Civil Rights Act of 1964 prohibits discrimination in "places of public accommodation" as the statute defines.  Section 2000a(b)(1) of the Act prohibits discrimination by hotels, motels, and similar establishments; (b)(2) prohibits discrimination by restaurants, cafeterias, and similar food service facilities; and (b)(3) prohibits discrimination by "any motion picture house, theater, concert hall, sports arena, stadium, or other **place of exhibition or entertainment**." (Emphasis added.)

FJ KCMO offers a wide variety of products and services.  The facility is mostly a retail outlet offering firearms, accessories, and fashion apparel.  The Complaint alleges the business offers classes, an event space, group events, leagues, date nights and other events, and indoor shooting range, firearms, firearms accessories and apparel.  Doc. 1, ¶¶ 16 and 28.  The gun range is a minor component of the facility in terms of both space and revenue.  The safety dress rule complained of only applies to usage of the live range.  On the Range Rules attached to the Complaint as Exhibit A, paragraph 35 indicates "[a] strict dress code must be adhered to in order to shoot on the range."  The dress code, which requires shooters on the live range to have proper attire, makes clear it is "[t]o ensure safety and a satisfactory experience for our members and guests."[3]  See Exhibit A to Complaint (Doc. 1).  The Complaint focuses on a single element of the Range dress code.  That section states, "[h]ats, caps, bandanas or any other head covering will be removed in the facility, except baseball caps facing forward."  Dress Code ¶ 6; Doc. 1, ¶ 21.

---

[3] In the context of the ADA, the regulations provide a "public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs or activities."  See 28 C.F.R. § 35.130(h).  Private businesses have the same rights.

The Complaint does not indicate Plaintiff was denied access to the facility. In fact, it admits Plaintiff and her husband "visited Frontier-Justice" and "waited in line" and "approached the cashier." Doc. 1, ¶¶ 31, 33, and 34. There is no claim Plaintiff was denied access or discriminated against in any manner while in the facility shopping or waiting in line. There is no claim she was denied access to the state-of-the-art simulator, classes, events, the ability to purchase firearms, firearm accessories or apparel. Plaintiff admits to being in the retail store and shows no evidence she was in any way precluded from classes, the event space, the simulator or that she was not allowed to purchase firearms or accessories or required to remove her head covering to enjoy those items or other areas within the facility. The existence of *animus* toward Muslim women with hijabs is rebutted by these factual allegations in Plaintiff's Complaint.

When enacting the Civil Rights Act, Congress intended, and the courts have affirmed, that the scope of Title II should be limited to those places of public accommodation specifically identified in the statute. "Title II approached the question of what is an establishment not through a generic definition, but through a series of extended lists." *Denny v. Elizabeth Arden Salons, Inc.,* 456 F.3d 427, 433 (4th Cir. 2006). *Denny* noted that "§2000(b) lists no fewer than fourteen examples of establishments, and subsection (b)(3) lists no fewer than five different places of entertainment." *Id.* For example, the statute does not list retail stores, and they "generally are not considered places of public accommodation under Title II." *Chu v. Gordmans, Inc.,* 2002 U.S. Dist. LEXIS 26623, *7 (Case No. 8:01CV182 , D.C. Neb. Apr. 12, 2002). Research has identified no cases considering whether a gun range might be considered a "place of entertainment" under Title II. The weight of the persuasive authority cited here, however, directs the conclusion that a gun range is not a "place of public accommodation" under Title II, particularly when it is a small portion of a larger retail facility. However, even if this Court were to determine that Frontier

Justice KCMO's retail facility with its attached indoor shooting range is covered under the statutory provision of a place of public accommodation because it satisfies the statutory inclusion of a "place of entertainment," dismissal of FJ, Mike Brown, Bren Brown and BMB is still warranted as none of them qualify as places of public accommodation or a place of entertainment and so Title II does not apply to them.

There's no question that Frontier Justice KCMO's gun range offers "tangential entertainment value" and may provide "its customers with relaxation." *Denny,* 456 F.3d at 432-33. Indeed, Frontier Justice KCMO, like the *Denny* "upscale beauty salon" and similar service establishments, affirmatively touts the entertainment value of the service it provides, including the use of the range. A gun range, however, which fundamentally is a place where registered firearms, containing live ammunition, are discharged under supervision in a statutorily regulated environment, is similar in form and substance to other service establishments that multiple courts have found despite having entertainment value are **not** places of public accommodation within the statute. A regulated gun range provides a service that is clearly distinct, and far removed, from a YMCA, public park, swimming pool, or similar recreational facilities considered "places of entertainment" for the general public within the scope of Title II.

Finding that Title II includes "all places where patrons might go in some part for relaxation" or entertainment would render "unnecessary the entire exercise in statutory draftsmanship that Congress undertook in 42 U.S.C. §2000a(b)." *Id.* at 433-34. Extending the scope of Title II to Frontier KCMO's gun range included as part of a larger retail location would be an improper "atextual construction of Title II." *Id.* at 433. The gun range located within the retail establishment is not a "place of public accommodation" that offers "entertainment" within the scope of Title II but, rather, a tangential benefit that includes entertainment within the dominant

8

retail purpose. Having a portion of the facility devoted to an indoor range does not convert the facility to a "place of public accommodation" any more than putting a video game in the corner of a barber shop would fall under the Title II coverage. Thus, Plaintiff cannot state a claim for religious discrimination under the Civil Rights Act.

Plaintiff's allegations regarding other activities offered at Frontier KCMO's gun range provide no assistance in stating a Title II claim. That Frontier KCMO also offers classes, group events, and a meeting space does not make the facility as a whole or the gun range portion of the facility a place of public accommodation. *See Gahr v. Heritage Found.,* 2020 U.S. Dist. LEXIS 18344 *2 (Dist. D.C. Feb. 3, 2020) (hosting public events and panel discussions does not constitute public accommodation). In a similar vein, retail sales of firearms, firearm accessories, and apparel do not fall within Title II. *Chu,* 2002 U.S. Dist. LEXIS 26623, *7. Frontier KCMO's gun range, and the facility as a whole, although providing some entertainment does not convert the retail facility to a "place of entertainment" that comes within the scope of Title II. *See Chu, supra.* If the facility is not within the scope of Title II, then Plaintiff's claims against FJ KCMO and the other Defendants are properly dismissed.

## 2. <u>Plaintiff's Disparate Impact Claim Does Not State a Claim Under Title II.</u>

The heart of Plaintiff's Complaint alleges that Frontier KCMO adopted a safety and Dress Code policy that purportedly has the effect of discriminating against Muslim women who wear a hijab. Plaintiff alleges:

> Frontier Justice imposes a discriminatory headwear ban that prohibits, "Hats, caps, bandanas or any other head covering . . . except baseball caps facing forward." Doc. 1, ¶ 21.

> Prior to Ms. Barakat's cash payment, the employee told her that she must remove her hijab in order to use the facilities, citing the company's dress code policy. Doc. 1, ¶ 37.

9

After Ms. Barakat repeatedly asked to see the dress code policy, as it was not posted visibly in the store, the employee responded that "hats, caps, bandanas, or any other head covering will be removed in the facility, except baseball caps facing forward." Doc. 1, ¶ 38.

Frontier Justice has denied other Muslims access to their facility and the use of their services as a matter of policy because of their hijabs. Doc. 1, ¶ 49.

Upon information and belief, Frontier Justice chooses to enforce its policy on a discriminatory basis, and in a manner that disproportionately impacts Muslim women. Doc. 1, ¶ 55.

Defendants' conduct described above constitutes a pattern or practice of resistance of the full and equal enjoyment by Muslims who wear the hijab on account of these individuals' religion, of rights secured by 42 U.S.C. § 222a, *et seq.*, and the pattern or practice is of such a nature and is intended to deny the full exercise of such rights. Doc. 1, ¶ 61.

Plaintiff is obviously pleading a "disparate impact" theory, which is permitted against an employer in a Title VII case. *See Griggs v. Duke Power Co.*, 401 US 424 (1971). Plaintiff contends that Frontier KCMO has adopted a policy that has a disproportionate impact on Muslim women. See Doc. 1, ¶ 55. But Title II does not permit such a theory.

Virtually every federal court that has considered the question has held that disparate impact claims do **not** come within the scope of Title II. *E.g., Hardie v. NCAA*, 97 F. Supp. 3d 1163, 1166 (S.D. Cal. 2015), *aff'd on other grounds,* 876 F.3d 312 (9th Cir. 2017); *Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1184-87 (W.D. Wash. 2002); *LaRoche v. Denny's Inc.,* 62 F.Supp.2d 1366, 1370 n.2 (S.D. Fla. 1999); *Arguello v. Conoco, Inc.,* 1997 U.S. Dist. LEXIS 23574 (N.D. Tex. 1997), *aff'd in part and rev'd in part,* 207 F.3d 803 (5th Cir. 2000). These courts have "looked to the legislative history of Title II, Congress's wording of other civil rights statutes, and the statute's text and concluded that disparate impact claims are not cognizable under Title II." *Hardie,* 97 F. Supp. 3d at 1166.

In *Akiyama,* the court identified the fundamental problem with a purported Title II disparate impact claim for religious discrimination, as Plaintiff alleges here. Given that religion is a "uniquely personal thing", with differing interpretations of "what is holy and what is profane", and the "practical difficulties in identifying a protected class and determining whether there has been a statistically significant adverse impact," the court held "there is no claim under Title II when a proprietor or event organizer has set up facially neutral regulations governing the provision of its services, with no indication of discriminatory motive or intent." *Akiyama*, 181 F. Supp. 2d at 1186-87. Not only are Frontier KCMO's dress code regulations facially neutral, but they are designed to "ensure safety and a satisfactory experience for our members and guests." Doc. 1-2, p. 5. There is clearly no indication of discriminatory motive or intent.

Plaintiff has not expressly pled intentional religious discrimination by Defendants against Plaintiff individually, or against Muslims collectively. She has alleged that Frontier KCMO allows "similarly situated individuals who wear headcaps or other clothing that similarly covers the neck and head to enter their facility and access to their services," Doc. 1, ¶ 22, while excluding Plaintiff and other Muslim women with loose fitting hajibs. And she alleges that "Frontier Justice's rationale for its head covering policy is pretextual insofar as the policy's goal is to exclude some Muslims from Defendants' gun range," Doc. 1, ¶ 58. The "allegation" in paragraph 58 is conclusory. It is not a fact statement. Plaintiff presumes the goal because Plaintiff disbelieves the business necessity and safety rationale provided by Frontier Justice. But "business necessity" is a defense to Disparate Impact cases. What evidence is there that Frontier Justice intentionally discriminates against persons because of religion, when every Muslim, including Plaintiff and her husband, has been permitted to use every part of the store except the live-fire range, which excludes all persons wearing loose fitting or unsafe head coverings regardless of gender or religions. There

11

are no facts showing anti-religious animus toward Muslim women in hajibs – only a policy against loose fitting head cover by male or females of any religion, for safety reasons.

Similar conclusory allegations of "pretext" may sustain a "disparate impact" claim against an employer under Title VII. Once again, however, this is a Title II claim of religious discrimination, not a Title VII employment claim, and "Congress and the supervising federal agencies have never added language to Title II to extend Title VII's employee protections to customers or patrons." *Boyle v. Jerome Country Club,* 883 F. Supp. 1422, 1432 (D. Idaho 1995). Plaintiff doesn't consistently identify the scope of the intended victims of Defendants' purported religious discrimination, variously identifying the intended target as "Muslims" as a whole, Doc. 1, ¶ 19, "Muslims who wear hijab", Doc. 1, ¶ 22, "Muslim women", Doc. 1, ¶ 55, and "some Muslims", Doc. 1, ¶ 58. Plaintiff can't contend Defendants acted with discriminatory intent against a particular group when Plaintiff offers an ever-shifting description of the supposed target.

Ultimately, Plaintiff's "factual allegations only suggest that she was treated differently because she insisted on wearing an article of clothing that, according to defendant, was inappropriate . . . . That decision is defendant's, and defendant's alone." *Jalal v. Lucille Roberts Health Clubs, Inc.,* 254 F. Supp. 3d 602, 606-07 (S.D.N.Y. 2017). Such allegations do not support a Title II claim of intentional discrimination because of religion, and Plaintiff has failed to state a cognizable claim. So, dismissal of the Complaint against each of the Defendants is appropriate.

### 3. <u>Plaintiff Previously Waived and Released Her Claim.</u>

Plaintiff admits that, after entering the facility with no issues and before applying to enter Frontier KCMO's gun range, she voluntarily executed a general waiver and release of claims. Plaintiff's Complaint states:

> While Ms. Barakat and her husband waited in line, they filled out the liability waiver form available on Frontier Justice's website. Doc. 1, ¶ 33.

When Ms. Barakat approached the cashier, she informed the employee that she had filled out the waiver form and provided her driver's license.  Doc. 1, ¶ 34.

The waiver and general release form executed by Plaintiff contains the typically broad, inclusive language about the claims and parties within its scope.  Exhibit 3.[4]  The form provides in part:

> I acknowledge that the owners and operators of Frontier Justice have employed diligent efforts and care in making the training classes, facilities and range as safe as possible.
>
> I waive all claims on behalf of myself, my guests, my heirs, executors, administrators and personal representatives for any demands, claims or causes of action for any injury, death, property damage, loss, or liability arising out of Frontier Justice Activities.
>
> I HEREBY RELEASE, DISCHARGE, AND COVENANT NOT TO SUE FRONTIER JUSTICE, or any related companies or subsidiaries, their respective administrators, directors, agents, officers, members, volunteers, and employees . . . and, if applicable, owner and lessors of the premises on which the Frontier Justice activity takes place . . . FROM ALL LIABILITY, CLAIMS, DEMANDS, LOSSES OR DAMAGES ON MY ACCOUNT CAUSED OR ALLEGED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF THE "RELEASEES" OR OTHERWISE.

In Missouri, a general release in the above form "disposes of the whole subject matter or cause of action involved.  *Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. Banc 1999).  A general release is enforceable "to bar claims against third parties who were not parties to the release, and it is not necessary that the release identify those persons by name or otherwise."  *Holmes v. Multimedia KSDK, Inc.,* 395 S.W.3d 557, 560 (Mo. Ct. App. 2013).

---

[4] The waiver form is included for the same reasons and on the same basis previously stated in footnote 2.  "[I]t is well-established that the court may consider a document, even if not attached or incorporated by reference, where the complaint 'relies heavily upon its terms and effect,' thus rendering the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).  This waiver is specifically referenced in Plaintiff's Complaint.

13

By executing the waiver and release, which is specifically pleaded in the Complaint, Plaintiff knowingly and voluntarily waived "all claims" against Defendants "FRONTIER JUSTICE" (Frontier KCMO), "related companies" (FJ), "officers" (Mike Brown, Bren Brown), and "lessors" (BMB Holdings, LLC). Plaintiff admits to the execution of this waiver in her Complaint as part of the process to be considered for admission to the range. This offer of admission, subject to safety rules, was legal consideration for the release, even though she eventually chose not to enter the range; thus, her Complaint must be dismissed against each of the Defendants.

### 4. <u>Defendants Mike Brown, Bren Brown, and FJ Should Be Dismissed.</u>

The request for relief in Plaintiff's Complaint consists solely of a request for entry of declaratory and injunctive relief prospectively against alleged future discriminatory practices and policies. Doc. 1, p 10. Based on the Complaint's allegations, the sole party against whom that relief would be possible is Defendant Frontier KCMO, the owner and operator of the facility and its included gun range, as well as the entity that adopted and enforces the safety rules and Dress Code at that location. See Doc. 1-2. Defendants FJ, Mike Brown, and Bren Brown do not own or operate the gun range at issue, and it is neither necessary nor appropriate to name them, as they cannot provide the relief sought by Plaintiff, nor can the Court direct them to do so.

There is no allegation that Mike or Bren Brown, who are identified as officers of Frontier Justice, did anything to Plaintiff. The Complaint does not show they were present at the facility on January 1, 2020 and, in fact, they were not. The Complaint does not show they communicated with Plaintiff at any time before she chose to leave the facility rather than adhering to the safety policy. *M.H. v. Bristol Bd. Of Educ.,* 169 F. Supp. 2d 21, 35-36 (D. Conn. 2001) (finding that certain defendants were not liable because plaintiffs had not shown their personal involvement in

the alleged unlawful constitutional deprivations).  The Complaint also makes no showing they alone have the power to change the safety policies set by Frontier Justice, KCMO, LLC.  Similar civil rights statutes have suggested there is no individual liability against an individual acting for their employer.  *See, e.g.*, *Saylor v. Ridge,* 989 F. Supp. 680, 688 (E.D. Pa. 1998) ("there is no individual liability under the ADA for the same reason that there is no individual liability under Title VII – both statutes were intended to create only *respondeat superior* liability).  *See also Spanger v. Moderne Glass Co.,* 2007 U.S. Dist. LEXIS 15697 (W.D. Pa. 2007).  In *Parker v. Tyson Foods, Inc.,* 2007 U.S. Dist. LEXIS 49519 (S.D. Miss. 2007), the Court found "dismissal of an individual defendant in their official capacity is appropriate."  The lack of individual liability under Title VII has been held to support the proposition that there could likewise be no individual liability under Title II.  *See, e.g., Shannon v. Univ. of Wisc.-Oshkosh,* 2000 U.S. Dist. LEXIS 24790 (E.D. Wis. 2000); *Bracey v. Buchanan,* 55 F. Supp. 2d 416, 420 (E.D. Va. 1999); *Montez v. Romer,* 32 F. Supp. 2d 1235, 1239 (D. Co. 1999).  "Title II of the ADA addresses public services and entities discrimination."  *See Serrano v. Marcal Paper Mills, LLC,* 2012 U.S. Dist. LEXIS 10742 at p. 9 (D.N.J. 2012).

There is no allegation specifically against Frontier Justice, LLC.  "[G]enerally, two separate corporations act as distinct legal entities, even if one partly or wholly owns stock in the other." *Ritter v. BJC Barnes Jewish Christian Health Sys.,* 987 S.W.2d 388, 384 (Mo. Ct. App. 1999) (citing *Mitchell v. K.C. Stadium Concessions, Inc.,* 865 S.W.2d 779, 784 (Mo. App. W.D. 1993)).  Dismissal of Frontier Justice, LLC is proper based on the lack of specific allegations against that entity.

Given the limited scope of relief sought by Plaintiff, and the limited target of such relief, it is not appropriate as a matter of law or fact for Defendants Mike Brown, Bren Brown, and

Frontier Justice, LLC to remain in this action. Plaintiff's Complaint fails to state a claim for relief against these Defendants, and they should be dismissed, with their costs.

### 5. **Plaintiff's Complaint Must Be Dismissed as Moot.**

The only relief sought in Plaintiff's complaint is prospective, to stop Frontier KCMO in the future from allegedly "denying Muslims services and access to the facility, merely because they choose to wear hijab." Doc. 1, ¶ 60. Before this suit was filed, however, Frontier KCMO began offering a Dress Code accommodation to patrons who choose to wear hijab on the range; specifically, those patrons are given the option of wearing a close-fitting hijab, sometimes worn while swimming, which may be obtained at the facility. Exhibit 4, shows a woman on the range in December 2021, (prior to the lawsuit) wearing a hijab purchased at the facility.

This accommodation obviates the need for the judicial relief sought by Plaintiff and renders her lawsuit moot. The jurisdiction of Article III federal courts is limited to "actual, ongoing cases and controversies." *Ali v. Cangemi,* 419 F.3d 722, 723 (8th Cir. 2005). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change of circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Id.* at 723-24. "Article III mootness divests the Court of subject matter jurisdiction." *Ahmed v. Sessions*, 2017 U.S. Dist. LEXIS 120954 *5 (D. Minn. July 11, 2017). If a court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

The attachments to Plaintiff's Complaint from social media reviews fail to justify the entry of the injunctive relief requested. First, the claims in the reviews are contested and simply unsubstantiated hearsay. Second, the reviews show that enjoining the Defendants from engaging

in the complained of acts or practices will not affect those allegedly making the complaints on Google. For example:

> Exhibit B indicates we "won't be returning."
>
> Exhibit C from three years ago asks others to "please boycott this place."
>
> Exhibit E states Frontier Justice will "never see our business again."
>
> Exhibit F from three years ago advises they will "never spend money in a place like that."

These individuals have indicated they won't return and an injunction, therefore, provides no relief to those alleged complainers. "For purposes of Title II of the ADA, a plaintiff must have a plan to return to the allegedly non-compliant structure, with the intent to benefit from its services, programs, or activities. . . ." *See Steelman v. City of Salem,* 2013 U.S. Dist. LEXIS 48624 (E.D. Mo. 2013) (no Article III standing to assert a Title II claim under the similar statute, ADA).

Frontier KCMO's provision of a hijab that satisfies the safety issues makes moot the future injury claimed and the prospective relief requested by Plaintiff, and the "court can no longer grant effective relief." Mootness divests the Court of jurisdiction and requires dismissal. So, the Court should dismiss this matter for lack of subject matter jurisdiction.

### 6. <u>The Frontier Defendants are Entitled to an Award of their Attorney's Fees and Expenses.</u>

Plaintiff's sole claim is for declaratory and injunctive relief under Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a *et seq.* Section 2000a-3 provides in part that "in any action commenced pursuant to this title… the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of its costs. Significantly, the statute does not solely provide for an award of attorney's fees to a "prevailing plaintiff," and the Supreme Court has found that a

17

prevailing defendant in a Civil Rights action may receive a statutory award of fees upon a finding that plaintiff's action "was frivolous, unreasonable, or without foundation." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

The Frontier Defendants are entitled to a fee award as prevailing parties. For the reasons previously stated, Plaintiff's Complaint provides no foundation or justification for filing this action and for naming Mike Brown, Bren Brown, or FJ. Plaintiff is represented both by competent local counsel and experienced discrimination law attorneys from Washington, D.C., all of whom are familiar with the Federal Rules of Civil Procedure and the required elements for pleading a Civil Rights Act claim and seeking injunctive relief. Plaintiff's counsel failed to state a claim upon which relief can be granted against the Frontier Defendants, and they failed to make a pre-filing inquiry that would have disclosed Frontier KCMO's offering of a hijab, which has vitiated Plaintiff's requested injunctive relief and rendered the case moot.

## <u>CONCLUSION</u>

For the reasons stated, Defendants Mike Brown, Bren Brown, Frontier Justice KCMO, LLC, and Frontier Justice, LLC move to dismiss Plaintiff's Complaint, and for an award of their attorney's fees and expenses incurred in this matter.

Respectfully submitted,

SWANSON BERNARD, LLC

By.  /s/ James A. Durbin
   James A. Durbin    #39640
   4600 Madison Ave, Suite 600
   Kansas City, MO 64112
   Telephone:  816/410-4600
   Facsimile:  816/561-4498
   jdurbin@swansonbernard.com
ATTORNEYS FOR DEFENDANTS MIKE
BROWN, BREN BROWN, FRONTIER JUSTICE,
LLC AND FRONTIER JUSTICE KCMO, LLC

18

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned hereby certifies that the original of the foregoing has been executed by the undersigned and a copy of the same has been electronically served, via CM/ECF on February 23, 2022, which will send a notice of electronic filing to all interested parties.

            */s/ James A. Durbin*
            Attorney for Defendants